UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 2:10-cr-21-JMS-CMM |
| | ) | |
| SANDRA MONTES-FLORES, | ) | -02 |
|     *Defendant.* | ) | |

### ORDER DENYING MOTION TO DISMISS INDICTMENT

Presently pending before the Court is Defendant Sandra Montes-Flores' Motion to Dismiss Indictment. [Dkt. 142.] The Indictment in this matter charges Ms. Montes-Flores with knowingly possessing with the intent to distribute 5 kilograms or more of a substance containing a detectable amount of cocaine. [Dkt. 25 (citing 18 U.S.C. §§ 841(a)(1), (b)(1)(A), 18 U.S.C. § 2).] For the following reasons, the Court denies Ms. Montes-Flores' motion.[1]

### I.
#### STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b) provides that a party "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." A motion that alleges a defect in an indictment must be brought before trial, unless it challenges the Court's jurisdiction or argues that the indictment does not state an offense. Fed. R. Crim. P. 12(b)(3)(B).

"Indictments are reviewed on a practical basis and in their entirety, rather than in a hyper-technical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). Allegations in an

---

[1] In a footnote of its response, the Government requests that the Court set an accept/reject hearing regarding the Government's outstanding plea offer. [Dkt. 149 at 16 n.6.] The Court conducts a standard inquiry of that nature at the final pretrial conference and, to the extent the Government believes a separate hearing should be held before that date, it can file a separate motion setting forth its basis for that request.

indictment are accepted as true, *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009), and an indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions, *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010); *see also* Fed. R. Crim. P. 7(c)(1). An indictment is reviewed on its face, regardless of the strength or weakness of the Government's case. *White*, 610 F.3d at 958. An indictment that follows the words of a statute to state the elements of a crime is generally acceptable. *Id.* at 958-59. "While there must be enough factual particulars so that the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *Id*. at 959.

The Court may resolve pretrial motions regarding a defense if it involves questions of law rather than fact; however, if the pretrial claim is substantially intertwined with the evidence of the alleged offense, the subject of the motion falls within the province of the factfinder. *United States v. Yasak*, 884 F.2d 996, 1002 n.3 (7th Cir. 1989). "It has long been accepted that the Government need not frame an indictment to include facts negating exclusionary conditions." *United States v. Spalding*, 2002 U.S. Dist. LEXIS 7789, *6 (S.D. Ind. 2002) (citing *McKelvey v. United States*, 260 U.S. 353, 357 (1922)).

## II.
### BACKGROUND

Ms. Montes-Flores moves to dismiss the Indictment in Cause Number 2:10-cr-21-JMS-CMM (the "Drug Case"), alleging that the Government has taken inconsistent positions by prosecuting her in this case and Cause No. 2:11-cr-32-JMS-CMM (the "False Statement Case"), in which she is charged with making a material false statement in violation of 18 U.S.C. § 1001(a)(2). In order to resolve the motion pending in this case, it is necessary to detail the back-

ground of both criminal cases as well as Ms. Montes-Flores' post-conviction proceedings in Cause No. 2:12-cv-225-JMS-WGH (the "Habeas Case"). The factual background set forth below is based on the Government's allegations, which must be proved beyond a reasonable doubt should either case proceed to trial, and the attestations of Assistant United States Attorney Matthias Onderak in an affidavit filed in the Habeas Case.[2]

### A.  September 2010 Vehicle Search

The Government alleges that on September 5, 2010, law enforcement officers conducted a traffic stop of a truck and accompanying camper driven by Raul Lopez-Montano in Putnam County, Indiana. [Drug Case dkt. 149 at 1.] Ms. Montes-Flores and Pastor Limon were passengers in the truck. [*Id.*] A drug detection dog alerted law enforcement officers to the presence of narcotics in the vehicle and, upon searching; they found $105 in the center console of the vehicle, $1,892 in Mr. Lopez-Montano's wallet, and $1,305 in Ms. Montes-Flores' purse. Law enforcement officials sought and obtained a warrant to search gas tanks attached to the vehicle and subsequently discovered approximately 21 kilograms of cocaine. [*Id.* at 2.]

### B.  Statement to Law Enforcement

Ms. Montes-Flores agreed to speak with the authorities after being advised of her *Miranda* rights. [*Id.*] Ms. Montes-Flores admitted involvement with transporting drugs from California to New York, but she stated that she did not know the details about who was instructing her, the type of drugs, or how much was being transported. [*Id.*] Ms. Montes-Flores specifically denied that Mr. Limon was involved. [*Id.* at 2-3.] Partially as a result of her statement, Mr. Limon was not arrested and never charged for his involvement. [*Id.* at 3.] Instead, Mr. Lopez-Montano

---

[2] Because it is necessary to cite to all three dockets, the Court will refer to them respectively as "Drug Case dkt. ___"; "False Statement Case dkt. ___"; and "Habeas dkt. ___." For example, the AUSA affidavit filed in the Habeas Case will be referred to as "Habeas dkt. 13-1."

and Ms. Montes-Flores were arrested and ultimately indicted by a grand jury for possessing with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine. [*Id.*; Drug Case dkt. 25.]

### C. Guilty Plea and Safety-Valve Proffer in Drug Case

On June 9, 2011, Ms. Montes-Flores signed a plea agreement with the United States. [Drug Case dkts. 71; 72.] A pre-sentence report was ordered and prepared, and a combined plea and sentencing hearing was ultimately set for September 28, 2011. [Drug Case dkt. 86.] The presentence report concluded that Ms. Montes-Flores fell in United States Sentencing Guideline criminal history category I and, accordingly, qualified for the safety-valve provision of 18 U.S.C. § 3553(f)(5) if she "truthfully provided to the Government all information and evidence [she] has concerning the offense or offenses that were part of the same course of conduct . . . ." [Drug Case dkt. 94 at 6.]

The morning of her plea and sentencing, Ms. Montes-Flores met with the Government to make her safety-valve proffer. [Habeas dkt. 13-1 at 1 ¶ 4.] Ms. Montes-Flores was not provided with any type of immunity because she had already signed a plea agreement and a stipulated factual basis admitting that she possessed with the intent to distribute more than 5 kilograms of cocaine. [*Id.* at 2 ¶ 5.] However,

> [d]uring the proffer, Flores seemed distraught and eventually began to cry. Flores told [the Government] that she did not know about the cocaine until the police were initiating a traffic stop on the vehicle in which she was a passenger. According to Flores, once the police began to pull the car over, fellow passenger Pastor Limon told her to tell the police that the drugs in the car were hers. During the proffer, Flores claimed that the cocaine actually belonged to Pastor Limon and that she lied when she told the police that Pastor Limon had nothing to do with the cocaine trafficking crime.

[*Id.*]

### D. Effect of Safety-Valve Proffer

After the proffer, AUSA Onderak met with DEA Special Agent Kevin Steele and they "both agreed that it is impossible to know when Flores is being truthful and when she is lying." [*Id.* at ¶ 6.] In light of Ms. Montes-Flores' recantation, the change of plea and sentencing hearing was vacated and the Drug Case was set for trial. [*Id.* at ¶ 7.]

Because she no longer qualified for the safety-valve, Ms. Montes-Flores was facing a mandatory minimum 120-month prison sentence if convicted of drug trafficking at trial. [*Id.* at ¶ 8.] AUSA Onderak and Special Agent Steele agreed that Ms. Montes-Flores seemed less culpable in the drug trafficking offense than the driver of the car, Mr. Lopez-Montano, and that it seemed unfair that Ms. Montes-Flores could receive a longer sentence than Mr. Lopez-Montano, who still qualified for the safety-valve. [*Id.* at ¶ 6.] AUSA Onderak had multiple conversations with Ms. Montes-Flores' attorney, Bradford Kessler, about resolving the case short of trial. [*Id.* at ¶ 8.] Specifically, AUSA Onderak

> brought up the fact that while Flores had not admitted in the "safety valve" proffer that she possessed with intent to distribute the cocaine, she did admit to committing a crime. Specifically, it was discussed that assuming arguendo Flores['] "safety valve" statement was true, she admitted to making a materially false statement to the police that enabled Pastor Limon to be released by law enforcement the day the 21 kilograms of cocaine was seized. Therefore, we discussed the possibility of Flores pleading guilty to making a materially false statement to law enforcement in violation of 18 U.S.C. § 1001, which carried with it a potential sentence of 0-5 years imprisonment and no statutory mandatory minimum term of imprisonment.

[*Id.* at 2-3 ¶ 8.]

As a result of these discussions, Ms. Montes-Flores agreed to plead guilty to making a materially false statement to law enforcement charges as long as the Government agreed to drop the drug trafficking charge. [*Id.* at 3 ¶ 8.] AUSA Onderak received approval from the drug unit

chief to drop the drug trafficking charge if Ms. Montes-Flores pled guilty to the false statement charge. [*Id.* at ¶ 9.]

### E. Guilty Plea in False Statement Case

On November 18, 2011, Mr. Montes-Flores was charged by Information with making a materially false statement to law enforcement in violation of 18 U.S.C. § 1001. [False Statement Case dkt. 1 at 1.] The Information charged that she "falsely stated to law enforcement officers who had confiscated approximately 21 kilograms of cocaine in Putnam County, Indiana from the vehicle occupied by SANDRA MONTES-FLORES, Raul Lopez-Montano, and Pastor Limon that she and not Pastor Limon was responsible for transporting the cocaine to New York City . . . ." [*Id.*] Ms. Montes-Flores waived her right to be indicted by a grand jury. [False Statement Case dkt. 20.]

Ms. Montes-Flores signed a plea agreement and agreed to waive her appellate rights in the False Statement Case. [False Statement Case dkts. 4; 5.] A plea and sentencing hearing was held in February 2012, and the following colloquy occurred regarding the factual basis underlying the charge:

> THE COURT: All right. So can you explain for me today what happened factually? What is the evidence that supports this charge? I know that you got pulled over. So, tell me what happened? What did you tell law enforcement?
>
> THE DEFENDANT: I told them that the drugs in the car were mine.
>
> THE COURT: Was that true?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. And you understood they were investigating a criminal proceeding?
>
> THE DEFENDANT: At the time I didn't know what was going on. I just said the drugs were mine.

>THE COURT:  But they weren't?
>
>MR. KESSLER:  I am sorry, Judge.  What did you tell them about Mr. Limon?
>
>THE DEFENDANT:  Mr. Limon told me to take the blame for him, and he would help me get out of jail.
>
>MR. KESSLER:  And when you were asked whether or not Mr. Limon had anything to do with it, what did you tell him?
>
>THE DEFENDANT:  I said no.
>
>MR. KESSLER:  Did you understand that that was a material statement and that it was false?
>
>THE DEFENDANT:  No.
>
>MR. KESSLER:  Did you think it was true when you told him that?
>
>THE DEFENDANT:  I knew it was lie, but I had to say it.
>
>THE COURT:  But you had to say it?  Were you afraid?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  Were you afraid for your life?
>
>THE DEFENDANT:  At the time I was afraid of whatever would happen if I didn't take the blame.

[False Statement Case dkt. 32 at 19-20.]

The Court accepted the factual basis stated at the hearing and as contained in the presentence report, which Ms. Montes-Flores confirmed was true.  [*Id.* at 21; *see* False Statement Case dkt. 15 at 4 ¶ 14 ("During her statement to law enforcement, the defendant was asked about Pastor Limon, a citizen of Mexico.  The defendant told law enforcement that Limon had nothing to do with the drugs found in the vehicle.  Partially as a result of this statement, law enforcement did not arrest Limon.  Subsequent law enforcement investigation revealed that Limon was involved in trafficking the cocaine, and the defendant had lied to DEA investigators when questioned.").]  Ms. Montes-Flores was sentenced to eighteen months imprisonment, to be followed

by one year of supervised release. [False Statement Case dkt. 32 at 28.] The sentence was essentially for time served.

After her plea was accepted, the Government dismissed the drug trafficking charge. [Drug Case dkts. 117; 118; Habeas dkt. 13-1 at 3 ¶ 9.] AUSA Onderak attests that the reason the Government agreed to dismiss the drug trafficking charge and agreed to Ms. Montes-Flores pleading guilty to the false statement charge "was in the interest of justice in order to enable the court to have broad discretion in sentencing Flores." [Habeas dkt. 13-1 at 3 ¶ 11.]

### F. Post-Conviction Proceedings

In August 2012, Ms. Montes-Flores filed post-conviction proceedings under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed in the False Statement Case. [Habeas dkt. 1.] Ms. Montes-Flores attested that after sentencing, she was transferred to immigration custody, at which time she learned that she would be deported as a result of her false statement conviction. [Habeas dkt. 2-1 at 11 ¶ 32.] Her post-conviction proceedings were based on her contention that Mr. Kessler, her trial counsel, did not adequately inform her of the deportation consequences of her plea in the False Statement Case. [Habeas dkt. 15 at 4.] Ms. Montes-Flores contended that if she had been informed that she would be deported after pleading guilty to the false statement charge, she would have rejected the plea and declared her intent to be tried on the drug trafficking charge. [*Id.*]

In February 2013, the Court granted Ms. Montes-Flores' motion and set aside her conviction and sentence in the False Statement Case. [*Id.* at 8.] Specifically, the Court found that Ms. Montes-Flores' trial counsel had been prejudicially ineffective by failing to inform her that a conviction for making a materially false statement to law enforcement would result in presump-

tively mandatory deportation.[3] [*Id.* at 7 (relying in part on *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010)).] Therefore, the Court vacated Ms. Montes-Flores' conviction in the False Statement Case and vacated the dismissal of the Drug Case. [Habeas dkt. 16 at 1.]

At a status conference on March 1, 2013, the Government indicated that it would not appeal the Court's order granting post-conviction relief but that it intended to proceed to trial in both the Drug Case and the False Statement Case. [Drug Case dkt. 141.] Ms. Montes-Flores subsequently filed a Motion to Dismiss the Indictment in the Drug Case and a Motion to Exclude the Statement Made at the Safety-Valve Proffer in the False Statement Case.[4] [Drug Case dkt. 142; False Statement Case dkt. 51.]

### III.
#### DISCUSSION

Ms. Montes-Flores relies on various legal principles to support her argument that the Indictment in the Drug Case must be dismissed, but underlying each argument is her contention that it is factually inconsistent for the Government to prosecute her in both the Drug Case and the False Statement Case. [Drug Case dkt. 143 at 8-26 (relying on principles of due process and judicial estoppel, citing Department of Justice prosecution policies, and arguing that she is being vindictively prosecuted).] Specifically, Ms. Montes-Flores argues that in the False Statement Case, the Government "took the position that Ms. Montes-Flores was not responsible for the cocaine at issue [in the Drug Case], which is squarely at odds with the plan to prosecute her now on the drug charge." [Drug Case dkt. 143 at 8.]

---

[3] Seventh Circuit precedent establishes that the crime of making a material false statement is considered a crime of moral turpitude and is therefore a removable offense. *Ghani v. Holder*, 557 F.3d 836, 841 (7th Cir. 2009); *see also Benaouicha v. Holder*, 600 F.3d 795, 797 (7th Cir. 2010) (alien who committed § 1001 crime of moral turpitude was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)).

[4] The Court addressed Ms. Montes-Flores' pending motion in the False Statement Case by separate entry, also issued today.

In response, the Government contends that it has not taken inconsistent positions by prosecuting Ms. Montes-Flores in both the Drug Case and the False Statement Case. It emphasizes that the False Statement Case only charged Ms. Montes-Flores with making a material misrepresentation to law enforcement about Mr. Limon's lack of involvement with the narcotics and that statement was material because, as a result, Mr. Limon was released the day of the drug seizure and not charged. [Drug Case dkt. 149 at 9-10.]

Ms. Montes-Flores cites non-binding case law to support her position that the Government is prohibited from pursuing inconsistent positions against her in separate criminal trials. [Drug Case dkt. 43 at 14.] In *United States v. Presbitero*, the Seventh Circuit discussed the conflicting authority at issue:

> As support for his argument, Presbitero directs us to decisions from other circuits that found due process violations where the government took fundamentally opposite positions in different trials involving the same crime. *See Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000) (finding due process violation where state used "inconsistent, irreconcilable" theories to secure convictions against two defendants in different trials for the same offenses and stating, "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime"); *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, 523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998), (stating "it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime"); *see also Abbate v. United States*, 359 U.S. 187, 197-200, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959) (Brennan, J., specially concurring). Not everyone agrees that the due process clause prevents the government from arguing inconsistent theories. *See United States v. Frye*, 489 F.3d 201, 214 (5th Cir. 2007) (stating "a prosecutor can make inconsistent arguments at the separate trials of codefendants without violating the due process clause" but finding inconsistencies not material to the conviction) (citation omitted); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 190, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005) (Thomas, J., concurring) (stating that the Supreme Court "has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories").

569 F.3d 691, 702 (7th Cir. 2009). Ultimately, however, the Seventh Circuit concluded that "[t]his case does not present us with the opportunity to decide whether we would agree with

*Smith* and *Thompson*. Notably, unlike in those two cases, the two trials did not involve the same underlying crime. . . . In addition, the government did not take fundamentally opposite positions in its two prosecutions." *Id.*

Like the Seventh Circuit in *Presbitero*, this Court does not need to decide to what extent the Government is prohibited from pursuing conflicting prosecutions because the Court concludes that the Government has not taken "fundamentally opposite positions in its two prosecutions" against Ms. Montes-Flores. *Id.* The Court agrees with the Government that the Information in the False Statement case only charges one material false statement—Ms. Montes-Flores' material misrepresentation that Mr. Limon was not involved in the drug trafficking. Specifically, the Information charged that Ms. Montes-Flores "falsely stated to law enforcement officers who had confiscated approximately 21 kilograms of cocaine in Putnam County, Indiana from the vehicle occupied by SANDRA MONTES-FLORES, Raul Lopez-Montano, and Pastor Limon *that she and not Pastor Limon was responsible* for transporting the cocaine to New York City . . . ." [False Statement Case dkt. 1 at 1 (emphasis added).] The Government's use of the conjunctive "and" ties the statement together into one misrepresentation hinging on Ms. Montes-Flores' exculpatory statements about Mr. Limon.

Moreover, it is possible for Ms. Montes-Flores to be guilty of the drug charge and of the false statement charge. As the Government points out, Ms. Montes-Flores could have played a role in transporting the cocaine across the country and also could have made a material misrepresentation regarding Mr. Limon's lack of involvement in that offense. [Drug dkt. 149 at 10-11.] The two are not mutually exclusive.

Finally, one of the elements of a false statement charge is that "the statement or concealed facts must be material." *United States v. Moore*, 446 F.3d 671, 677 (7th Cir. 2006) (citing

18 U.S.C. § 1001). A statement aimed at misdirecting agents or casting suspicion away from a suspect satisfies the materiality requirement. *United States v. Lupton*, 620 F.3d 790, 806-07 (7th Cir. 2010). During the plea and sentencing proceedings, as well as in the underlying factual basis that Ms. Montes-Flores confirmed was true, the material nature of the charged misrepresentation was exclusively linked to Mr. Limon being released at the scene, not to Ms. Montes-Flores' self-incriminating statements. [False Statement Case dkts. 32 at 19-20 (Ms. Montes-Flores confirming that factual basis is true); 15 at 4 ¶ 14 (factual basis stating that "[d]uring her statement to law enforcement, the defendant was asked about Pastor Limon, a citizen of Mexico. The defendant told law enforcement that Limon had nothing to do with the drugs found in the vehicle. Partially as a result of this statement, law enforcement did not arrest Limon. Subsequent law enforcement investigation revealed that Limon was involved in trafficking the cocaine, and the defendant had lied to DEA investigators when questioned."); *see also* Habeas dkt. 13-1 at 2 ¶ 8 (AUSA Onderak's attestation that "[Ms. Montes-Flores] admitted to making a material false statement to the police that enabled Pastor Limon to be released by law enforcement the day the 21 kilograms of cocaine was seized.").]

Because the Government is not taking fundamentally opposite positions in the two prosecutions, the Court concludes that the premise underlying all of Ms. Montes-Flores' arguments

must be rejected.[5]  Accordingly, the Court denies her Motion to Dismiss the Indictment in the Drug Case.  [Drug Case dkt. 142.]

## IV.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** Ms. Montes-Flores' Motion to Dismiss Indictment.  [Dkt. 142.]  The Court will promptly set this matter for trial by separate entry.

05/02/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert W. Kent
BAKER & MCKENZIE LLP
robert.kent@bakermckenzie.com

Matthias David Onderak
UNITED STATES ATTORNEY'S OFFICE - EV
Matthias.Onderak@usdoj.gov

Kathleen Sanderson
BAKER MCKENZIE LLP
kathleen.sanderson@bakermckenzie.com

---

[5] Because the Court has rejected the premise underlying all of Ms. Montes-Flores' arguments, it need not separately address her legal arguments.  The Court notes, however, that although Ms. Montes-Flores cites extensively from the DOJ handbook, she cites no case law supporting her alleged right to enforce those policies, and the Seventh Circuit has rejected that right in another context.  *See, e.g.*, *United States v. Fletcher*, 634 F.3d 395, 405 (7th Cir. 2011) (holding that the internal prosecutorial guideline at issue did "not create a substantive right for the defendant which he may enforce, and is not subject to judicial review").  Moreover, it is difficult to understand how the Government's prosecution could be viewed as vindictive when the Court, not the Government, reinstated the Indictment against Ms. Montes-Flores after she successfully sought relief in the Habeas Case.  Ms. Montes-Flores did not challenge that result in the Habeas Case and does not argue in her motion that it was incorrect.